UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **WILLIA DEAN BESSARD** | **CASE NO. 6:21-CV-01876** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **U S COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action.

## Administrative Proceedings

Claimant, Willia Bessard, fully exhausted her administrative remedies before filing this action in federal court. She filed an application for disability insurance benefits and an application for supplemental security income benefits, alleging disability beginning on March 16, 2017. (Rec. Doc. 9-1, p. 243; 247). The onset date was subsequently amended to May 3, 2019, the day after a prior ALJ decision denying an earlier application. (Rec. Doc. 9-1, p. 37-38). Her application was denied. She then requested a hearing, which was held on January 27, 2021 before Administrative Law Judge Steven Rachal. (Rec. Doc. 9-1, p. 32-69). The ALJ issued

a decision on February 5, 2021 concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date through the date of the decision. (Rec. Doc. 9-1, p. 15-22). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 9-1, p. 6). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## **Summary of Pertinent Facts**

Claimant was born on April 10, 1964. She was 55 years old on the alleged disability onset date (May 3, 2019) and 56 years old at the time of the ALJ's decision. She has a high school education. (Rec. Doc. 9-1, p. 40). She last worked as a support deputy for the Lafayette Parish Sheriff's Office for approximately three to four years supervising inmates. Her employment history also includes working at Walmart as a customer service representative and cashier, and later at Security Plan Life Insurance as a sales agent. (Rec. Doc. 9-1, p. 40-45). She alleged that she has been disabled since March 2017 due to lower back pain with radiating symptoms in her lower extremities. (Rec. Doc. 9-1, p. 45-47). The medical records in the record reveal the following pertinent history:

- Claimant presented to the Our Lady of Lourdes Medical Center on October 5, 2016 after she had slipped on a wet step at work two months earlier. She had fallen backwards and blacked out for a few seconds. She had pain in her thoracic and lumbar spine with numbness to the right leg. The lumbar and thoracic x-rays were normal. She was discharged and referred to Dr. Lon Baronne. (Rec. Doc. 9-1, p. 852-57).

- A November 1, 2016 MRI of her lumbar spine revealed mild discogenic degenerative disease and facet arthrosis at L4-S1 with mild bilateral foraminal narrowing at L5-S1. There was a small and shallow central disc protrusion at L5-S1 without associated spinal canal or lateral recess stenosis. (Rec. Doc. 9-1, p. 858).

- On April 7, 2017, Dr. Lasseigne administered a L5 selective nerve root injection. (Rec. Doc. 9-1, p. 391-99).

- In September 2017, Claimant underwent a Mental Status Examination by consultative psychological examiner, Dr. Sandra Durdin. The exam was normal. (Rec. Doc. 9-1, p. 862).

- Claimant's primary care physician, Dr. Metoyer, treated her for hypertension, back pain, lumbar radiculopathy, and rheumatoid arthritis between April 2016 and April 2019. (Rec. Doc. 9-1, p. 627-634).

- From October 2016 through January 2019, Claimant treated with Dr. Baronne and Dr. Kevin Lasseigne for her lower back pain following her fall at work. Dr. Baronne diagnosed her with spondylolisthesis and radiculopathy. He treated her with medication, physical therapy, and injections before recommending surgery. The surgery was recommended due to instability with retrolisthesis and a foraminal/far lateral herniation on the right at L5-S1 compressing the L5 nerve root. (Rec. Doc. 9-1, p. 868-925; 942-966).

- A July 13, 2017 report by clinical examiner, Dr. Alexander Michael, pursuant to the state workers' compensation proceedings concluded that Claimant sustained a contusion of the thoracic and lumbar spine superimposed on pre-existing degenerative disc bulges and facet disease in the lumbar spine. Dr. Michael recommended an electrodiagnostic study to validate subjective complaints of L5 radiculopathy or radiculitis, because her clinical objective findings did not concur with findings consistent with an L5 compression/radiculopathy on the right side. (Rec. Doc. 9-1, p. 926-41).

- In January 2019, Dr. Baronne performed a L5-S1 laminectomy and fusion with instrumentation due to lumbar instability with spondylolisthesis and lumbar disc herniation with radiculopathy at L5-S1. She thereafter underwent physical therapy for rehabilitation. (Rec. Doc. 9-1, p. 518-625). In February 2019, Dr. Baronne provided a medical source statement which indicated that

Claimant could stand 2-3 hours per day, sit 2-3 hours per day, lift or carry 10-20 pounds, and that she could not then work at any level. (Rec. Doc. 9-1, p. 840-44).

- In February 2019, six weeks after surgery, Claimant was great other than slight intermittent spasming to the middle low back. In April 2019, 12 weeks after surgery, she reported to Dr. Baronne that she had very little pain radiating down her legs. Her pain was 3 out of 10. In August 2019, six months post-surgery, she reported to Dr. Baronne that she was approximately 80% better. She continued with significant lumbar discomfort controlled with medications. She could begin light duty activities as tolerated. (Rec. Doc. 9-1, p. 803-08). Dr. Baronne listed her work status as light duty as of April 11, 2019. (Rec. Doc. 9-1, p. 811).

- September 12, 2019 Abbeville General emergency room records show knee and hip pain, x-rays of which were normal. She complained of right hip and knee pain for five years and right sided sciatica. (Rec. Doc. 9-1, p. 645-52). A few days later, she went to a different emergency room complaining of chronic right knee and hip pain for the past seven years. She was walking with a cane, which she had been using for 2 years. She had also had back surgery. She was taking Norco for the pain, but she said it was not working. She denied injury/trauma or the inability to bear weight. Hip and knee x-rays were normal

5

except for a small right knee effusion with a small patellar enthesophyte. (Rec. Doc. 9-1, p. 721-25).

- She returned to the emergency room in November 2019 with worsening chronic right knee pain. It appeared that Dr. Baronne had been weaning her from Norco, and she was thus given NSAID instead of more Norco. (Rec. Doc. 9-1, p. 740-43).

- On November 21, 2019, she saw Dr. Daniel Hodges at Lafayette Bone and Joint Clinic. Dr. Baronne noted that her symptoms were caused by a work-related fall on July 13, 2016, resulting in low back pain radiating into the right hip and leg. She described pain as constant and exacerbated daily by bending, sitting and standing and relieved by opioid analgesics. An ER physician had referred her to Dr. Baronne, who had performed surgery in January 2019. Postoperatively she reported that her pain had improved 75-80%. Her pain and discomfort were controlled with medication. Six months after surgery she was progressing as expected and continued pain medications for discomfort. She was referred to pain management for continuation of care. She rated her pain at 7/10 daily. Physical examination showed a stable gait, with stability and full strength and range of motion in her lower extremities. The straight leg raise test produced back pain and leg pain. Dr. Hodges prescribed Mobic, Norco, and Zanaflex. (Rec. Doc. 9-1, p. 755-63).

- In a December 10, 2019 visit for pain management, Dr. Hodges noted a stable gait and overall full strength and range of motion in her extremities. Dr. Hodges noted that she continued with subjective complaints of pain radiating into the right lower extremity and L5 distribution. He added Neurontin to her medications. (Rec. Doc. 9-1, p. 764-66).

- A March 12, 2020 visit with Dr. Hodges revealed stable gait and station and overall good strength and range of motion in the extremities. The straight leg test produced leg pain. Dr. Hodges continued medication, which he found seemed to give adequate relief. (Rec. Doc. 9-1, p. 791-93). On August 11, 2020 Dr. Hodges' physical exam revealed tender lower spine and sacroiliac joint with painful lumbar muscles with extension and flexion. Testing was limited due to pain. (Rec. Doc. 9-1, p. 783-84).

- Claimant had follow-ups with Dr. Baronne in January, February, and April 2020 for ongoing low back pain radiating into her right hip and leg with occasional numbness. She had decided not to have any injections. Lumbar x-rays showed no acute changes or significant abnormalities, with normal alignment, hardware in good position. An updated MRI was unchanged. Dr. Baronne's plan limited her lifetime weight limit to less than 30 pounds and continued her treatment with Dr. Hodges for pain management. She was continued on no work status since June 27, 2017. (Rec. Doc. 9-1, p. 797-800).

- A July 1, 2020 Functional Capacity Report by Paul Fontana at Dr. Hodges's referral indicated that she could work at the sedentary level with the following restrictions: lift 5 pounds or less occasionally; all standing lifts performed from waist level, due to complaints of significant increased back pain; unable to perform floor lift from seated position secondary to reports of increased low back pain. She was unable to perform her past job at the Sheriff's Office. (Rec. Doc. 9-1, p. 775-76). See also Dr. Hodges's report at Rec. Doc. 9-1, p. 786.
- In the July 2020 full baseline report, later provided to Dr. Hodges, Mr. Fontana observed 20 inconsistent/non-physiological and self-limited behaviors. He therefore identified her as a Type II Symptom Magnifier known as "Gameplayer," or one who consciously magnifies her pain symptoms for secondary gain or to control the environment. Therefore, Mr. Fontana believed that she was able to perform sedentary work as outlined above. Because he believed that Claimant was consciously magnifying her pain behaviors, Mr. Fontana did not recommend any further physical rehabilitation. (Rec. Doc. 9-1, p. 820-30). Notably, Mr. Fontana completed an earlier FCR in 2018 (prior to surgery) wherein he reached the same conclusion. (Rec. Doc. 9-1, p. 909-16).

- In an August 18, 2020 visit, Dr. Baronne noted that she was progressing as expected after her surgery, though she continued with chronic radicular symptoms into the lower extremity which was confirmed by EMG nerve conduction studies. She was then benefiting from pain management. She continued to use an assistance device for ambulation due to lower extremity pain. Upon physical exam, she had full strength, but was tender to palpation of the lumbar paraspinal muscles and SI joint. She had positive compression and Faber tests. Dr. Baronne recommended SI joint injections, but she wished to hold off due to the previous efficacy. She was allowed to continue with sedentary activities within her residence and to re-consider SI joint injections if her symptoms increased. (Rec. Doc. 9-1, p. 795-96).
- In an updated medical source statement in January 2020, Dr. Baronne indicated that Claimant could stand/walk for 1 hour per day, sit for 4 hours a day, and carry up to 10 pounds. She did not need an ambulatory device. Dr. Baronne did not feel that she was capable of performing full time work at any level. (Rec. Doc. 9-1, p. 846-48).

Claimant testified at the hearing that she initially had some improvement for two to three weeks after the surgery, but that her pain became worse thereafter than it was before the surgery. (Rec. Doc. 9-1, p. 48-49). Since then, she continues with pain management and home exercise, though she has had to modify her program

because she is in so much pain. (Rec. Doc. 9-1, p. 49). She stated that her pain is usually 8 out of 10 and that she only sleeps about four hours a night. She can stand for five to seven minutes at a time, cannot carry anything over five pounds, and cannot drive most distances without pain. (Rec. Doc. 9-1, p. 50-53). She testified that she needs help getting out of bed and in and out of the bath and that she no longer attends church because she is too uncomfortable to sit. (Rec. Doc. 9-1, p. 57-60).

The ALJ found that Claimant was capable of light duty work, subject to certain physical limitations, and that, as such, she was capable of performing past relevant work and therefore not disabled. (Rec. Doc. 9-1, p. 19-22). Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial

10

evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id*. (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

### B. <u>Entitlement to Benefits</u>

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and

disabled, regardless of indigence. See 42 U.S.C. § 423(a). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). Supplemental Security Income SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). See also *Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

    **C.**    **Evaluation Process and Burden of Proof**

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do

12

the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th

Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D. The ALJ's Findings and Conclusions

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since May 3, 2019. (Rec. Doc. 9-1, p. 18). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: rheumatoid arthritis, degenerative disc disease, and status post anterior fusion. (Rec. Doc. 9-1, p. 18). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 9-1, p. 18). Claimant does not challenge this finding.

The ALJ determined that Claimant had the residual functional capacity (RFC) to perform light duty work subject to certain restrictions. (Rec. Doc. 9-1, p. 19-22). Claimant challenges this finding.

At step four, the ALJ found Claimant was capable of performing past relevant work as a sales clerk and insurance sales agent. (Rec. Doc. 22). Claimant challenges this finding.

The ALJ did not reach step five.

E.   **The Allegations of Error**

Claimant alleges the ALJ erred by 1) failing to articulate a rational, medical, and evidentiary basis for discarding Plaintiff's treating physician's opinions; and 2) improperly relying on Claimant's credibility rather than the evidence.

F.   **Whether the ALJ improperly rejected Claimant's providers' opinions.**

Claimant first argues that, in formulating her RFC, the ALJ failed to properly consider her treating physicians' opinions regarding her ability to work. A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)).The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must

15

consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

Claimant's application for benefits was filed after March 17, 2017. Therefore, the ALJ's duty to weigh medical opinions is governed by 20 C.F.R. 404.1520c. Although an ALJ is no longer required to give controlling weight to a treating physician's medical opinions, the regulations state that "[w]hen a medical source provides one or more medical opinions…, we will consider those medical opinions … from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 404.1520c(a). The factors to be considered are the examining relationship, the treatment relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and any other factor which the claimant brings to the court's attention. 20 C.F.R. § 404.1520c(c)(1-5). The two most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With regard to supportability, the regulation states that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. § 404.1520c(c)(1). With regard to consistency, the regulation states that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2). Thus, the ALJ was required to consider all of the medical opinions, focusing primarily on the supportability and consistency of each opinion.

In determining that Claimant was capable of performing light duty work, the ALJ relied principally on the State agency non-examining medical consultants, who, after reviewing medical records, determined that Claimant is capable of light duty work. (Rec. Doc. 9-1, p. 70-87; 96-117). The ALJ considered, but rejected, the opinions of Claimant's providers, Dr. Baronne, who opined that Claimant was not capable of any work, and Paul Fontana, occupational therapist, whose functional capacity report concluded that Claimant was capable of sedentary work with restrictions. The ALJ's primary reason for rejecting the foregoing opinions was that the opinions were based on Claimant's subjective complaints, rather than objective medical evidence; however, Claimant's occupational therapist, Dr. Fontana, who opined that Claimant was magnifying her symptoms and expressed skepticism at the extent of Claimant's injury, concluded that Claimant was capable of sedentary work with restrictions. (Rec. Doc. 9-1, p. 775-76; 820-30). Therefore, the Court agrees

17

that the ALJ erred in relying exclusively on the State agency non-examining medical consultants who found Claimant was capable of light duty. The matter should therefore be remanded for reconsideration of Claimant's RFC with due regard given to Claimant's providers, including Dr. Baronne, Dr. Hodges, and Mr. Fontana, who, after conducting occupational testing and consulting with Claimant's physicians, opined Claimant was capable of sedentary work.

### G. Whether the ALJ's credibility determinations were supported by substantial evidence.

Claimant next challenges the ALJ's determination to the extent it rejected Claimant's credibility. Credibility determinations are generally entitled to great deference so long as they are based on substantial evidence. *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir.2000); *McKnight v. Astrue*, 340 F. App'x 176, 181 (5th Cir. 2009).

The ALJ appeared to be persuaded by the fact that, although Claimant used a cane, no medical provider prescribed any such assistive device. Moreover, the ALJ relied predominantly on the fact that her providers' opinions were based on Claimant's subjective complaints. Substantial evidence supports the ALJ's findings in this regard. See medical records cited above, which are devoid of any provider's recommendation to use a cane. The above-cited medical records further evidence that Claimant progressed as expected following her January 2019 lumbar surgery, and that within a year she was again experiencing pain; although, her physical exams

remained normal, with full strength and range of motion. Although the ALJ rejected Mr. Fontana's opinion, Mr. Fontana's opinion actually supports the ALJ's credibility findings in that Mr. Fontana found Claimant consciously magnified her pain symptoms for secondary gain or to control the environment. (Rec. Doc. 9-1, p. 820-30). Notwithstanding the ALJ's credibility considerations, the Court finds that remand is warranted for reconsideration of Claimant's RFC. Although Mr. Fontana likewise questioned Claimant's credibility, he still opined that Claimant could perform sedentary work.

## **Conclusion and Recommendation**

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions to again evaluate the claimant's residual functional capacity and whether she is disabled. Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act ("EAJA").[1]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of

---

[1] See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[2]

Signed in Lafayette, Louisiana, this 19th day of April, 2022.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[2] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).